COMMONWEALTH *vs.* JOSEPH J. BOTTARI
(and five companion cases[1]).

Middlesex. April 1, 1985. — August 28, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arrest. Probable Cause. Search and Seizure,* Threshold police inquiry, Probable cause, Exigent circumstances. *Constitutional Law,* Search and seizure.

Action by police officers in blocking an automobile with a police cruiser and ordering the occupants out of the automobile at gunpoint amounted to an arrest for which probable cause was required. [780-782] NOLAN, J., dissenting.

A reliable informant's statement to police that a named individual had a gun and no license, that this individual was at a particular location, and that he drove a 1978 Oldsmobile automobile with a certain license number did not give police officers who had driven to the specified location probable cause to arrest the defendant as he approached his automobile with three other persons, or to search the defendant and his automobile. [783-784] NOLAN, J., dissenting.

Where police officers had blocked in an automobile and had ordered its occupants out at gunpoint without having probable cause to arrest or to search, the subsequent discovery of chemical mace on one of the persons and of a dirk knife in the glove compartment of the automobile could not be justified as having been made during a threshold policy inquiry. [784-785] NOLAN, J., dissenting.

Where police officers had arrested the four occupants of an automobile without probable cause, the subsequent search of the trunk of the automobile, in which weapons were found, could not be justified by the doctrine of *Cady* v. *Dombrowski,* 413 U.S. 433 (1973). [785] NOLAN, J., dissenting.

COMPLAINTS received and sworn to in the Somerville Division of the District Court Department on June 9, 1983.

Motions to suppress evidence were heard by *Henry A. Tempone,* J.

---

[1] Four against Joseph J. Bottari and one against Paul L. Tanso.

The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*Kevin J. Ross*, Assistant District Attorney (*Max W. Beck*, Assistant District Attorney, with him) for the Commonwealth.

*John C. McBride* for Joseph J. Bottari.

*Kenneth J. Fishman* for Paul L. Tanso.

LIACOS, J.  On June 9, 1983, the defendant Paul L. Tanso was charged with possession of chemical mace. On the same date, five complaints were issued against the defendant Joseph J. Bottari for the following offenses: carrying a dangerous weapon (a police baton and a dirk knife), receiving a firearm with the serial number obliterated, possession of ammunition, carrying a firearm, and possession of burglarious tools. Both defendants filed motions to suppress. A judge of the Somerville District Court held an evidentiary hearing and allowed the defendants' motions. The Commonwealth appealed the ruling pursuant to Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979). We transferred the case to this court on our own motion.[2] We affirm the order allowing the defendants' motions to suppress.

The relevant facts found are these. On June 8, 1983, at approximately 9 P.M., a detective with the Boston police department met with an informant at the Area A police station on New Sudbury Street in Boston. The informant told the detective, "There's a Joseph Bottari who has a big gun and it looks like a Magnum and he's got no license, and he's at the Assembly Mall." The informant also stated that Bottari had a 1978 Oldsmobile automobile and that the registration number was 112DET. The Boston police department detective related the foregoing information to a police dispatcher of the Somerville police department, who in turn relayed the information to Officers Edward Barnard and Bernard Doherty.

At approximately 11:20 P.M., Officers Barnard and Doherty observed the automobile described by the informant parked

---

[2] The case came before us without written findings and rulings. After oral argument, we issued an order that the judge of the District Court submit his findings and rulings in writing. He has done so. We rely on these findings, as well as the findings made orally at the hearing.

near the Sack Cinema in the parking lot of the Assembly Square Mall. Forty-five minutes to an hour later the officers observed four individuals leaving the cinema and approaching the automobile. The individuals were not acting suspiciously or violating any law. Neither officer knew Bottari or Tanso by sight or description. Officer Barnard testified that he saw a black object, which was later discovered to be a knife, sticking out of the pocket of one of the four individuals. In his oral findings, however, the judge found that the officer was unable to see the object, due to the officer's vantage point and the lighting conditions.[3]

As another individual, later identified as Bottari, opened the door to the driver's seat, Officer Barnard drove the police cruiser to the rear of the automobile so that the automobile could not be backed out of its parking space. The automobile also was blocked by vehicles parked to the side and in front of it. In his written findings, the judge stated that both police officers immediately drew their guns, ordered the four men out of the automobile, and had them place their hands on the roof of the automobile. The officers then conducted a pat frisk of the four men. Officer Barnard found nothing on Bottari; Officer Doherty found a small cannister of mace on Tanso.

Officer Barnard then asked Bottari for the vehicle's registration.[4] As Bottari opened the glove compartment to produce the registration, the officer reached into the glove compartment and took out a dirk knife. Officer Barnard then escorted Bottari to the rear of the automobile and asked him if he had the keys to the trunk. Bottari said that the keys were on the roof of the automobile. Officer Barnard took the keys, opened the trunk, and saw a red nylon bag which was zippered shut. A police baton lay elsewhere in the trunk. The red bag was opened, revealing a .44 magnum gun, some tools, and ammunition. The police officers released the other two individuals but had

---

[3] The object was carried by one of the individuals who was released at the scene. No charges are based on the possession of this knife.

[4] No effort had been made by the police officers to ascertain the name of the registered owner of the vehicle before this time.

Bottari and Tanso conveyed to the Somerville police station. The officers ordered the vehicle towed to a lot used by the police department to park impounded vehicles.

The Commonwealth argues that the search of the automobile was lawfully conducted because the police officers had probable cause to believe that Bottari illegally possessed a firearm, and exigent circumstances excused the necessity of a search warrant. The Commonwealth further argues that the dirk knife, found in the glove compartment, and the chemical mace, found on Tanso, were both discovered in the course of a lawful threshold inquiry. Finally, the Commonwealth contends that the search of the trunk was a valid departmental safety procedure designed to ensure that the firearm, believed to be in the automobile, did not cause harm to the public. We conclude, as did the judge, that there was an illegal arrest without probable cause at the time the four men were seized at gunpoint. We agree further with the judge that the objects seized were the fruits of the illegal arrest.

We begin our review with the well-settled proposition that the judge's findings of fact are "binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them." *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination by this court, such ultimate findings are "entitled to substantial deference by this court." *Commonwealth* v. *Bookman,* 386 Mass. 657, 661 n.6 (1982). Questions of credibility are, of course, for the trial judge to resolve. *Commonwealth* v. *Meehan,* 377 Mass. 552, 557 (1979).

It is clear that the motion judge took the view that, although the police officers testified that they did not formally arrest Bottari and Tanso until after the dirk knife and the mace were found, an arrest was effectively made at the time the defendants and their companions were blocked in their automobile and then ordered out of the automobile by police officers with drawn guns. In the judge's view the rights of the parties were "fixed" at that moment, and the legality of the search and seizure

that ensued must be judged by the situation as it existed at that time.

In *United States* v. *Marin,* 669 F.2d 73, 81 (2d Cir. 1982), the court stated:

> "In determining whether a particular restraint is an arrest or tantamount to an arrest, thus requiring probable cause, or instead is a restraint short of an arrest, thus calling for analysis under a reasonableness standard, the degree of restraint must be analyzed. When no formal arrest has been made, several factors must be considered. In particular, courts have considered the amount of force used by the police, the extent of the intrusion, and the extent to which the individual's freedom of movement is restrained. . . . In cases involving stops of cars, we have considered the number of police officers and cars used to effect the stop; whether the police blocked the car in motion or otherwise completely impeded its movement, or whether they merely pulled up near it; and whether the police officers had their guns drawn and in view." (Citations omitted.)

In *Marin* the court held, on facts almost identical to the case at bar, that, when a vehicle was blocked by Federal agents who approached the vehicle with guns drawn and ordered the occupants out at gunpoint, the encounter was to be considered an arrest. Cf. *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983). Of similar import, on similar facts, is *United States* v. *Strickler,* 490 F.2d 378, 380 (9th Cir. 1974), where the court stated:

> "[W]e simply cannot equate an armed approach to a surrounded vehicle whose occupants have been commanded to raise their hands with the 'brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information' which was authorized in [*Adams* v. *Williams,* 407 U.S. 143, 146 (1972)]."

The officers' use of force was not precipitated by any actions of the defendants, nor did the officers testify that they feared for their safety or the safety of others at the time they approached the automobile with their guns drawn. *Commonwealth* v. *Almeida,* 373 Mass. 266, 271 (1977). *Commonwealth* v. *Silva,* 366 Mass. 402, 407 (1974). The fact that the officers suspected that one of the occupants may have had an illegal gun does not justify their use of force, without the presence of other fear-provoking circumstances which are absent here.[5] Cf. *United States* v. *Jackson,* 652 F.2d 244, 249 (2d Cir. 1981) (not unreasonable for a police officer to draw gun when approaching a car whose driver may be an escaping armed bank robber). Because the officers' actions exceeded the scope of a *Terry*-type investigative stop, we consider the effect of those actions to be an arrest. "The facts fall within the rule that '[t]o constitute an arrest there must be either a physical seizure of the person by the arresting officer, or a submission to his authority and control.' . . . Although the word 'arrest' was not used either at this time or later in the officers' testimony, that was not necessary." *Commonwealth* v. *Holmes,* 344 Mass. 524, 526 (1962), quoting *Thompson* v. *Boston Publishing Co.,* 285 Mass. 344, 349 (1934). "There is no magic in the word 'arrest' . . . ." *Commonwealth* v. *Wallace,* 346 Mass. 9, 16 (1963).

---

[5] *Commonwealth* v. *Ballou,* 350 Mass. 751 (1966), cert. denied, 385 U.S. 1031 (1967), on which the dissent relies, is inapposite for a number of reasons. Unlike Bottari, the defendant Ballou was well known to the police as one who had been convicted on a gun-carrying charge and who, after being incarcerated and paroled, had the parole revoked, and then was released. *Id.* at 753. The police also knew, independent of the informant's tip, that Ballou was known to carry a gun and was involved in an ongoing Boston gang war. *Id.* Despite this, the court did not conclude that there was probable cause to arrest Ballou until the police discovered a gun on his person. *Id.* at 755. Nor did the court conclude that Ballou was placed under arrest at the outset of the inquiry. *Id.* at 756. Thus, the dissent's claim that "we upheld an arrest" in *Ballou* is plainly without foundation. Last, we point out that, although *Ballou* was decided prior to *Terry* v. *Ohio,* 392 U.S. 1 (1968), the court treated the *Ballou* incident as a stop and frisk justified on the facts known to the police, including their reasonable concern for their own safety. *Commonwealth* v. *Ballou, supra* at 756-757. As we have pointed out in the text, the facts in this case are totally dissimilar.

To be valid, an arrest must be based on probable cause. Art. 14 of the Massachusetts Declaration of Rights. G. L. c. 276, § 22 (1984 ed.). Cf. *Commonwealth* v. *Baldassini,* 357 Mass. 670, 675 (1970). See *Beck* v. *Ohio,* 379 U.S. 89 (1964); *Wong Sun* v. *United States,* 371 U.S. 471 (1963). See also *Commonwealth* v. *Haas,* 373 Mass. 545 (1977). Evidence seized as the result of an illegal arrest is to be suppressed. *Beck* v. *Ohio, supra. Wong Sun* v. *United States, supra.*

We believe that there was no probable cause to arrest Bottari and Tanso, or to search the automobile. To conduct an arrest or a search that comports with art. 14 of the Declaration of Rights of the Massachusetts Constitution, information known to the police officers at the time of the arrest or search must satisfy the two-prong standard of *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969). *Commonwealth* v. *Upton,* 394 Mass. 363, 374 (1985) (*Upton II*). Under the *Aguilar-Spinelli* standard as we have construed it, police officers acting on the basis of information supplied by a confidential informant must know of underlying circumstances from which they can conclude that the informant is "credible" or his information "reliable." In addition, the officers' information should contain an indication of the informant's basis of knowledge, i.e., some of the underlying circumstances from which the informant concluded that evidence of the crime would be found where the informant said it would. *Id.* at 375. Each prong of the *Aguilar-Spinelli* test presents a separate important consideration; however, independent police corroboration may compensate for deficiencies in either or both prongs of the test. *Id.* at 375-376. *Commonwealth* v. *Upton,* 390 Mass. 562, 568 (1983) (*Upton I*).

While the veracity prong of the *Aguilar-Spinelli* test may be satisfied by the fact that previously the informant's information resulted in a conviction,[6] there is no showing whatsoever of any underlying facts on which the informant based his

---

[6] Although the judge stated in his written findings that an arrest resulted from the informant's information, the record indicates that two convictions resulted from the same information.

information.[7] This deficiency was not compensated for by corroboration of any significant information by the police officers. Unlike the informant in *Draper* v. *United States,* 358 U.S. 307, 313 (1959), the informant in this case failed to describe the appearance, conduct, and expected behavior of the suspect. The police officers ascertained only that a 1978 Oldsmobile automobile with registration 112DET was parked at the Assembly Square Mall. Corroboration of innocent details is normally less significant in establishing probable cause than corroboration of facts suggestive of criminal conduct. *Upton I, supra* at 571.[8] Furthermore, the conduct of the defendants, observed by the police officers, was unsuspicious. See *Commonwealth* v. *Stevens,* 362 Mass. 24, 28 (1972). The information provided and the limited corroboration of innocuous details in unsuspicious circumstances were insufficient to support probable cause, "for the description of criminal activity was without the detail, either as to its content or the process by which the content was obtained, that could raise it above the level of a casual rumor." *Commonwealth* v. *Kaufman,* 381 Mass. 301, 302-303 (1980).

The Commonwealth next argues that the dirk knife, found in the glove compartment, and the chemical mace, found on Tanso, were discovered in the course of a lawful threshold inquiry. The Commonwealth seeks to rely on the lesser constitutional standards applicable to justify a stop and threshold inquiry. *Terry* v. *Ohio,* 392 U.S. 1 (1968). The difficulty with this argument is that the primary illegality already had occurred, and the discovery of the dirk knife and the mace was tainted by that illegality. *Commonwealth* v. *Benoit,* 382 Mass. 210 (1981). *Commonwealth* v. *Bacon,* 381 Mass. 642, 643 (1980).

---

[7] We find spurious the Commonwealth's argument that the informant's use of the present tense indicates his firsthand observation. We agree with the defendant Bottari that it is equally likely that the tip was based on rumor. We note also that the statement of the informant (see *supra* at 778) does not indicate clearly that Bottari had the gun on his person at that time.

[8] The police officers later identified Bottari and learned that the automobile was under his control, a fact consistent with the informant's tip. This corroboration, however, cannot be considered, because it resulted from an unlawful arrest.

The arrest being illegal, the fruits of the search incident thereto must be suppressed. See *Commonwealth* v. *McCleery,* 345 Mass. 151 (1962). Accord *Beck* v. *Ohio,* 379 U.S. 89 (1964); *Wong Sun* v. *United States,* 371 U.S. 471 (1963); *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 (1920). The subsequent frisks and inquiries cannot be justified as the limited inquiry permitted by *Terry* v. *Ohio, supra,* and its progeny. See *Commonwealth* v. *King,* 389 Mass. 233, 241 (1983). Whether the police officers had a reasonable basis to conduct a limited inquiry under their authority to stop and frisk becomes irrelevant in light of the fact that no such activity occurred prior to the illegal arrest and seizure.

Finally, the Commonwealth argues that the search of the trunk was justified under the doctrine of *Cady* v. *Dombrowski,* 413 U.S. 433 (1973). In *Cady,* the Supreme Court of the United States upheld a warrantless search of the trunk of an automobile for the purpose of ensuring that a weapon, believed to be in the automobile, did not fall in the wrong hands. There, the court held that the police officers acted in their capacity as peace officers to conduct a noninvestigatory search of the trunk of an automobile to protect the public. In the instant case, the police officers conducted an investigatory search for which there was no probable cause; the fruits of that search were tainted in the same way as was the seizure of the dirk knife and the mace. The narrow rationale of *Cady* cannot be extended to this case. Hence, the contents seized from the trunk of the automobile were properly suppressed.

We affirm the order allowing the defendants' motions to suppress.

*So ordered.*

HENNESSEY, C.J. (concurring). I write in concurrence here to incorporate my views as expressed in my concurring opinion in *Commonwealth* v. *Borges, post* 788 (1985), published simultaneously with this opinion. I add only that this case, factually, does not come as close to *Draper* v. *United States,* 358 U.S. 307

(1959), as the *Borges* case does. The informant in *Borges* provided substantially more details to the police, and for that reason *Borges* is a closer and more difficult case.


NOLAN, J. (dissenting). This opinion supports the classical rule of logic that a faulty premise leads to an erroneous conclusion. The premise on which the court relies today, i.e., that the police officers had no probable cause to believe that Bottari had a gun with him, compels suppression. However, the premise is faulty.

An examination of facts to determine whether there was probable cause implicates "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar* v. *United States,* 338 U.S. 160, 175 (1949). The court's appraisal today reflects exclusively the legal technician at work (and in error at that).

The judge found that the informer on a prior occasion had supplied information to the police which had resulted in an arrest. Also from the judge's findings we learn that the informer identified a person as Joseph Bottari, and said that Bottari "has a big gun and it looks like a Magnum and he's got no license, and he's at the Assembly Mall." The informer went further and identified the motor vehicle which Bottari had — a 1978 Oldsmobile automobile bearing a registration number 112DET. Ten minutes after receiving this information from the dispatcher, police officers saw this vehicle at the Assembly Mall. Forty-five minutes to an hour later (the judge finds), the officers observed four individuals approach this vehicle.

The information from this informer constituted sufficient probable cause to do precisely what the officers did. They blocked the vehicle to prevent its escape. They conducted a pat-frisk of the individuals and asked Bottari for evidence of ownership of the vehicle. If this conduct is permissible, the evidence should not have been suppressed.

The language of *Commonwealth* v. *Ballou,* 350 Mass. 751, 756 (1966), cert. denied, 385 U.S. 1031 (1967), in which we upheld an arrest for possession of a weapon when the informer

was anonymous, is particularly appropriate to the instant case. "Any mild indignity or interference with privacy which the defendant experienced was trifling in comparison with the sensible means taken to safeguard human life. An individual in the defendant's position is guaranteed against undue interference by the requirement that the police officer's belief of the existence of danger must be reasonable."

In the instant case, the preliminary pat-frisk and request for evidence of ownership of the vehicle was not only permissible but was dictated by the nature of the information as to the gun. Because the information was sufficiently specific and because the reliability of the informer had been demonstrated on an earlier occasion, the officers were warranted as reasonable men in believing that Bottari had a gun. This reasonable belief authorized the minimal and reasonable force encompassed in a pat-frisk. See *Draper* v. *United States,* 358 U.S. 307, 313 (1959). Once the officers found the mace on Tanso and the dirk knife in the glove compartment which Bottari opened (not the police), the officers then had a right to search the trunk. See *United States* v. *Ross,* 456 U.S. 798, 809 (1982). In all, the conduct of the police was entirely consistent with good, sound, and constitutional police practice. For these reasons, I dissent.