COMMONWEALTH *vs.* STEVEN BROWN.

No. 90-P-1483.

Suffolk. October 7, 1991. - November 20, 1991.

Present: WARNER, C.J., DREBEN, & IRELAND, JJ.

*Search and Seizure,* Probable cause. *Constitutional Law,* Search and
seizure, Probable cause. *Probable Cause. Controlled Substances.*

In a criminal case, the information provided to police by a confidential
informant, insufficiently detailed with respect to description of the de-
fendant and corroborated by police only in innocuous details in unsus-
picious circumstances, did not establish probable cause for a search of
the defendant shortly after he arrived in Boston on a train from New
York City. [577-579]

INDICTMENT found and returned in the Superior Court De-
partment on June 21, 1989.

A pretrial motion to suppress evidence was heard by
*Daniel A. Ford,* J., and the case was tried before *Elizabeth
J. Dolan,* J.

*Brownlow M. Speer,* Committee for Public Counsel Ser-
vices (*Marjory A. German* with him) for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the
Commonwealth.

WARNER, C.J. The only issue presented by this appeal is
whether information provided by a confidential informant,
buttressed by independent police corroboration, provided suf-
ficient information to establish probable cause for a search.[1]
The defendant's motion to suppress the cocaine found in the
search was denied. After a jury trial in the Superior Court,
he was convicted of trafficking in cocaine.

_____

[1]On appeal, the Commonwealth does not argue that the police had justi-
fication for a stop and search pursuant to the principles articulated in
*Terry* v. *Ohio,* 392 U.S. 1 (1968).

Officer Robert Fratalia of the Boston police anticrime unit was the sole witness at the hearing on the motion to suppress. The facts found by the motion judge, supplemented by additional undisputed evidence presented at the hearing, are as follows: Officer Fratalia received a telephone call from a confidential informant at approximately 8:30 P.M. on June 14, 1989. As a result of the call, he met with the informant about fifteen minutes later. One or two days earlier, the informant had given Officer Fratalia information about an individual named Charles Mebane. He described Mebane's physical appearance (including that he walked with a serious limp) and said that Mebane would be coming off a train at the Amtrak Back Bay station at a certain time and date; he would be carrying cocaine. Mebane's time of arrival and physical appearance matched the informant's description, and Mebane was found to be carrying cocaine. Mebane was arrested and the cocaine was seized by the police.

At the June 14 meeting, the informant told Officer Fratalia that Steven Brown would arrive at the Amtrak Back Bay station on a train from New York at approximately 9:15 that evening. He would be carrying cocaine. The informant described Brown as a black man in his twenties, with medium-dark skin, of medium build, about six feet three or four inches tall, weighing between one hundred eighty and one hundred eighty-five pounds. He would be dressed casually and would be wearing glasses. As a result of the tip, Officer Fratalia and two partners went to Back Bay station and learned that a train was scheduled to arrive from New York at 9:15 P.M. The train arrived at 9:25 P.M. The defendant got off the train. His appearance fit the description the informant had given. He was wearing a green and white striped polo shirt and jeans, and he carried a maroon colored bag over his shoulder. He looked over his left shoulder "as if someone were behind him" as he walked through the train station.

The officers stopped the defendant as he left the station. They identified themselves, told him that he fit the description of a suspect they were looking for, and asked his name. He responded "Steven Brown." Asked where he had come

from, he answered, "the Amtrak train." Officer Fratalia told the defendant to set the maroon colored bag down on the ground. He complied by placing it at his feet. Fratalia then told him to sit down; he did so. Next, Fratalia searched him for weapons and found none. He then squeezed the bag to feel for weapons and felt a hard object inside. He opened the bag and found a package containing a kilo of cocaine.

Article 14 of the Declaration of Rights of the Massachusetts Constitution requires that a search grounded on information provided by an unnamed informant must meet the standard of probable cause established by *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Commonwealth* v. *Robinson*, 403 Mass. 163, 164 (1988). The Commonwealth must "demonstrate (1) some underlying circumstances from which the law enforcement officials could have concluded that the information was reliable (the veracity test); and (2) some underlying circumstances which demonstrate a basis of the informant's knowledge (basis of knowledge test)." *Id.* at 164-165. "Each prong of the *Aguilar-Spinelli* test — the basis of knowledge and the veracity of the informant — presents an independently important consideration . . . . [E]ach element of the test must be separately considered and satisfied or supplemented in some way." *Commonwealth* v. *Upton*, 394 Mass. 363, 375-376 (1985). "These are vital, not merely perfunctory requirements. To justify the intrusion of [a] . . . search, the tip must not only come from a credible person, but he must be shown to be relying on something more than a casual rumor or an individual's general reputation." *Commonwealth* v. *Avery*, 365 Mass. 59, 63 (1974). *Commonwealth* v. *Robinson, supra* at 165. Independent police corroboration of a detailed tip may compensate for deficiencies in either or both prongs of the test. *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990), and cases cited.

The motion judge correctly ruled (and the defendant conceded at oral argument) that Officer Fratalia's testimony concerning the informant's previous tip satisfied the veracity prong of the *Aguilar-Spinelli* test. It was "supported by . . .

facts relating to . . . the accuracy of the informant's information on that prior occasion." *Commonwealth* v. *Mejia*, 411 Mass. 108, 111 (1991), citing *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). See *Commonwealth* v. *Lapine*, 410 Mass. 38, 41-42 (1991). The informant had described Mebane, his mode of transportation and time of arrival accurately, had correctly predicted that he would be in possession of cocaine, and the tip had resulted in the seizure of cocaine. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975) (informant's veracity was established by the provision of accurate information during a police investigation); *Commonwealth* v. *Lapine*, 410 Mass. at 40-42 (informant's veracity was established by the provision of accurate information concerning the presence and amount of drugs and the description of a house, leading to drug-related arrests); *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 45-46 (1991) (informant's veracity was established by the provision of information leading to two arrests and a seizure of cocaine). Contrast *Commonwealth* v. *Mejia*, 411 Mass. at 108-114 (affidavit which stated that an informant had given the police information that led to three past arrests but did not provide details of the arrests or the accuracy of the information failed to establish the informant's veracity).

As the motion judge found, the informant failed to reveal the basis of his knowledge that the defendant was carrying cocaine. The close question here is whether, under standards developed by our cases, the information in the tip, corroborated by independent police work, was sufficiently detailed to show that it was based on "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Commonwealth* v. *Robinson*, 403 Mass. at 165, quoting from *Spinelli* v. *United States*, 393 U.S. at 416.[2] *Draper* v. *United*

---

[2]"[T]he officer's information should contain an indication of the informant's basis of knowledge, i.e., some of the *underlying circumstances* from which the informant concluded that *evidence of the crime* would be found where the informant said it would" (emphasis supplied). *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985). If independent police corroboration is

*States*, 358 U.S. 307 (1959), provides a "benchmark" for determining whether police corroboration of the details of an informant's tip satisfies the *Aguilar-Spinelli* test. *Commonwealth* v. *Robinson, supra* at 165-166, quoting from *Spinelli* v. *United States, supra*. "[T]he detail provided by the informant in *Draper* . . . [is] a suitable measurement." *Commonwealth* v. *Gonzalez*, 403 Mass. 172, 175 (1988). In *Draper* the informant described the defendant as a black male, twenty-seven years old, five feet eight inches tall, weighing about 160 pounds, and wearing a light-colored raincoat, brown slacks and black shoes. The informant accurately predicted that the defendant would be arriving by train on one of two particular mornings, that he would be carrying a tan zipper bag and that he walked at a fast pace; he would be bringing three ounces of heroin. *Draper*, 358 U.S. at 309 & n.2.

In this case, the informant gave the defendant's name and accurately described the defendant's physical appearance and his approximate age, his mode of travel and time and place of arrival. Other than a description of "casual clothes," the informant did not give particulars as to the defendant's clothing nor did he say that the defendant would be carrying a maroon colored shoulder bag or any baggage at all. The informant gave no indication of his source of knowledge as to these details.

"As frequently occurs in search and seizure cases, we are dealing here with line-drawing of a difficult nature." *Commonwealth* v. *Borges*, 395 Mass. 788, 797 (1985) (Hennessey, C.J., concurring). The task is especially difficult because of the fragile premise that police corroboration of innocent detail and easily predictable events described by an informant can compensate for deficiencies, as here, in the basis of knowledge prong of the *Aguilar-Spinelli* test. See 1 LaFave, Search and Seizure § 3.3(f)(2d ed. 1987). As applied in cases decided by the Supreme Judicial Court, *Draper* requires police corroboration of an informant's detailed tip of

---

to carry the day, it must, of course, make up any deficiency in these respects.

physical appearance, clothing, baggage, if any, and time and place of arrival. See *Commonwealth* v. *Robinson, supra* at 164; *Commonwealth* v. *Santana*, 403 Mass. 167, 168 (1988); *Commonwealth* v. *Gonzalez*, 403 Mass. at 173 & n.2; *Commonwealth* v. *Farrow*, 403 Mass. 176, 177 (1988). (In addition, in all of these cases, except *Farrow*, the informant accurately predicted the mode of transportation; in *Farrow* the informant correctly predicted the defendant's arrival at a particular address.) The facts in this case do not "compare favorably," *Commonwealth* v. *Robinson, supra* at 166, with those in *Draper*. The informant did not give a detailed description of the defendant's clothing or state that he would be carrying a maroon colored shoulder bag. The tenuous probative value of the confirmation of innocuous detail (when there is no information about alleged criminal activity) demands at least a comparable level of particularity of description and corroboration to that which was present in *Draper* and in the Supreme Judicial Court cases we have just cited. In cases involving this kind of information, there should be no whittling of underpinnings considered essential to satisfaction of the basis of knowledge prong of the *Aguilar-Spinelli* test in the Massachusetts progeny of *Draper*. We hold that in this case "[t]he information provided and the . . . corroboration of innocuous details in unsuspicious circumstances were insufficient to support probable cause, 'for the description of criminal activity was without the detail, either as to its content or the process by which the content was obtained, that could raise it above the level of casual rumor.' "[3] *Commonwealth* v. *Bottari*, 395 Mass. 777, 784 (1985), quoting from *Commonwealth* v. *Kaufman*, 381 Mass. 301, 302-303 (1980). Contrast *Commonwealth* v. *Cast*, 407 Mass. at 895-898.

---

[3] In the circumstances, the testimony of a police officer that the defendant looked over his left shoulder "as if someone were behind him" as he walked through the train station has no corroborative effect on the facts known to the police. Contrast *Commonwealth* v. *Anderson*, 366 Mass. 394, 400 (1974) (a "stop and frisk" case).

The order denying the motion to suppress is reversed, the judgment is reversed and the verdict is set aside, and the case is remanded to the Superior Court for the entry of a finding of not guilty.[4] See *Commonwealth* v. *Funches*, 379 Mass. 283, 296-297 (1979). Contrast *Commonwealth* v. *Taylor*, 383 Mass. 272, 283-285 (1981).

*So ordered.*

---

[4]The evidence seized pursuant to the search was essential to the defendant's conviction.