COMMONWEALTH *vs.* CHARLES W. MEBANE, THIRD. No. 91-P-1464. November 3, 1992. *Arrest. Probable Cause. Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause.

The defendant (Mebane) was convicted of trafficking in cocaine, possession of ammunition, and possession of marihuana. He argues that his motion to suppress evidence should have been allowed because the police had no probable cause to stop and search him. Mebane also claims that he should have been permitted an in camera hearing to probe the confidential informant's veracity. He contends that information provided to the police by the confidential informant did not satisfy the basis of knowledge prong of the *Aguilar-Spinelli* test, nor was the information sufficiently corroborated by independent police observation. *Aguilar* v. *Texas,* 378 U.S. 108 (1964). *Spinelli* v. *United States,* 393 U.S. 410 (1969). We affirm.

On June 13, 1989, Boston police Officer Robert Fratalia (Fratalia) met with a confidential informant (It). It was personally known to Fratalia and had provided him with reliable information in the past which led to an arrest in a trafficking in cocaine case.[1] It told him that a black man named Charlie was arriving in Boston that night at approximately 9:30 by train from New Haven, Connecticut. It informed Fratalia that Charlie was carrying illegal drugs and illegal weapons, he was between 5'5" and 5'6" tall, had facial hair, and walked with a severe limp.

---

[1]In that case, Commonwealth *vs.* Kenneth Hines, the substance had been analyzed as cocaine in the District Court and probable cause had been found. An indictment was then issued by a grand jury and the matter was awaiting trial in the Superior Court.

Fratalia and his partner (Watts), upon receiving this information, immediately went to Back Bay Station to determine if a train was arriving from New Haven around 9:30 P.M. They discovered that a train was due at that time, went to the track on which the train was to arrive, and saw a man alighting who matched the description of the alleged drug courier. His physical features were exactly as It had predicted, including his pronounced limp. The detraining passenger also carried a large, gift-wrapped box. Fratalia and Watts followed the man to the platform, identified themselves as police officers, and pat-frisked him for weapons. In response to questions from Fratalia, the man told them his name was Charles Mebane, he had boarded the train in New Haven, and he was headed to a specified address in the Dorchester section of Boston. This last response was of particular significance to Fratalia since he was aware that the Boston police department's drug control unit had, within the last several days, raided an apartment at that address, recovering both weapons and drugs.

Fratalia inquired of Mebane about the contents of the box, and Mebane replied that he believed it contained a cellular telephone[2] which he had gone to Connecticut to purchase. On the basis of the exchange with Mebane and It's report that Mebane would be carrying firearms, the officers searched the box. They found it to contain more than one hundred grams of cocaine, nine millimeter handgun ammunition, drug packaging paraphernalia, and, indeed, a cellular telephone. The officers arrested Mebane, further searched his person, and discovered a quantity of marihuana.

When an unnamed informant's tip is relied on by law enforcement officers as supplying probable cause to arrest and to search, art. 14 of the Massachusetts Declaration of Rights requires that the information pass muster under the two-pronged standard set forth in *Aguilar* v. *Texas, supra,* and *Spinelli* v. *United States, supra.* That standard may be met in one of two ways. As a rule, the Commonwealth must demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the "basis of knowledge" test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the "veracity" test). *Commonwealth* v. *Robinson,* 403 Mass. 163, 164-165 (1988).

Here, although the informant's information had led to a prior arrest, it was insufficient, by itself, to satisfy the basis of knowledge prong. *Commonwealth* v. *Rojas,* 403 Mass. 483 (1988). "However, an informant's detailed tip, plus independent police corroboration of those details, of the type that occurred in *Draper* v. *United States,* [358 U.S. 307 (1959)], can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* standard, and thus satisfy the art. 14 probable cause requirement. *Commonwealth* v. *Robinson, supra* at 166. *Commonwealth* v. *Reddington,* 395

---

[2]"All I know is it's supposed to be a cellular telephone."

Mass. 315, 322 (1985). *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985)." *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990).

We distinguish the facts in *Commonwealth* v. *Brown*, 31 Mass. App. Ct. 574 (1991),[3] from those presently before us. In *Brown*, where this court found insufficient corroboration to support probable cause, the informant merely provided the defendant's name, his description in general terms, and the approximate time of his train's arrival. This court concluded that, "[a]s frequently occurs in search and seizure cases, we are dealing here with line-drawing of a difficult nature." *Id.* at 578, quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 797 (1985) (Hennessey, C.J., concurring). There was no corroboration of anything beyond innocuous and meager detail, thus not elevating the informant's description to a level beyond "casual rumor." 31 Mass. App. Ct. at 579.

The facts before us now are substantially more detailed and more significant than those in *Brown*. Not only are we presented with a more complete physical description, since It knew of Mebane's facial hair and pronounced limp, we also have Officer Fratalia's testimony that Mebane's destination was the scene of a recent drug and weapons raid. We conclude that this independent police corroboration compares favorably with cases in which it has been determined that there was adequate independent police corroboration. See *Commonwealth* v. *Robinson*, *supra* at 164-166; *Commonwealth* v. *Santana*, 403 Mass. 167, 168, 171 (1988); *Commonwealth* v. *Farrow*, 403 Mass. 176, 177-178 (1988).

We also reject Mebane's argument that his statements (his name, starting point, and destination) should have been excluded because they were not voluntary and were the product of a custodial interrogation in violation of *Miranda* v. *Arizona*, 384 U.S. 436 (1966). The short answer is that the defendant was not in custody at the time he answered the questions posed by the officers; the questions, asked in the course of an investigatory stop, resulted in answers that provided additional corroboration to support probable cause to arrest and to search. See *Commonwealth* v. *Walker*, 16 Mass. App. Ct. 955, 956-957 (1983); *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 4 (1990).

Finally, Mebane argues that the court erred in denying his motion for an in camera hearing regarding the arrival time of the train. He claims that the train was supposed to arrive at 9:00 P.M., not 9:30, and argues that It presented faulty information to the police when It indicated that the train would arrive at approximately 9:30 P.M. The purpose of an in camera hearing would have been to determine whether Mebane's allega-

---

[3]The *Brown* case is factually related to this case: both cases involved the same confidential informant and Officer Fratalia, and the arrest of Mebane preceded the arrest of the defendant in *Brown* by one day. Also, "Officer Fratalia's testimony concerning the informant's previous tip [with regard to Mebane] satisfied the veracity prong of the *Aguilar-Spinelli* test [for the *Brown* case]." 31 Mass. App. Ct. at 576.

tions about the train's arrival times "cast a reasonable doubt on the veracity of material representations" made by Officer Fratalia and It. *Commonwealth* v. *Amral*, 407 Mass. 511, 522 (1990). Mere suspicion about It's information was not enough to trigger an in camera hearing; "an assertion of facts tending to confirm such a suspicion" is required. *Ibid.* A half-hour disparity in arrival time hardly rises to the level of making false statements "intentionally or recklessly." *Id.* at 523.

*Judgments affirmed.*

*John C. McBride* (*Thomas Kerner* with him) for the defendant.

*Roger L. Michel, Jr.*, Assistant District Attorney, for the Commonwealth.