COMMONWEALTH VS. ISMAEL TORRES, JR.

Essex. February 5, 2001. - April 10, 2001.

Present: MARSHALL, C.J., GREANEY, COWIN, SOSMAN, & CORDY, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Thresh-
old police inquiry, Automobile, Protective frisk. *Constitutional Law,* Search
and seizure.

A police officer was warranted in stopping a motor vehicle where the operator
committed a traffic violation in his presence [672-673]; further, the
observed conduct of the six occupants of the vehicle supported the officer's
reasonable belief that his safety and the safety of others was in danger, and
the officer was warranted in ordering the occupants out of the vehicle
[673-675] and in conducting a patfrisk for weapons before making any
further inquiry [675-677]: the level of intrusiveness was reasonable in the
circumstances, and the weapon found on the person of one passenger dur-
ing the patfrisk was properly admissible in evidence.

COMPLAINT received and sworn to in the Lawrence Division of
the District Court Department on January 21, 1998.

A pretrial motion to suppress evidence was heard by *Ellen
Flatley,* J.

Following interlocutory review by the Appeals Court, 49
Mass. App. Ct. 348 (2000), the Supreme Judicial Court granted
leave to obtain further appellate review.

*Catherine Langevin Semel,* Assistant District Attorney, for the
Commonwealth.

*John R. Valerio* for the defendant.

CORDY, J. A criminal complaint was issued by the Lawrence
Division of the District Court Department charging the
defendant, Ismael Torres, Jr., with unlicensed possession of a
firearm in a vehicle, possession of a firearm and ammunition
without a firearm identification card, and receiving stolen
property (the firearm). The firearm and ammunition that were
the subject of the complaint were seized from the defendant
when an automobile in which he was traveling as a passenger

was stopped for a traffic violation. In the course of that stop, the defendant was ordered out of the vehicle and pat frisked. A loaded firearm was found in his waist band.

Prior to trial, the defendant filed a motion to suppress the firearm and ammunition claiming that they were discovered and seized in circumstances amounting to an unlawful arrest. After an evidentiary hearing, the motion judge allowed the motion.

The Commonwealth filed an application for leave to appeal that was allowed by a single justice. The Appeals Court affirmed the motion judge's ruling. *Commonwealth* v. *Torres*, 49 Mass. App. Ct. 348, 351 (2000). We granted the Commonwealth's application for further appellate review. We now reverse the motion judge's order allowing the motion to suppress.

1. *Facts.* In reviewing the allowance of a motion to suppress, we will not disturb a judge's findings of fact absent clear error. *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998). We summarize the facts as found by the judge, *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), supplemented by uncontroverted facts adduced at the hearing. *Commonwealth* v. *Watson*, 430 Mass. 725, 726 n.5 (2000). At 2:15 P.M. on January 10, 1998, Officer Jeffrey Hart of the Lawrence police department observed a Mazda Protegé automobile, in which the defendant was a passenger, fail to stop or slow down at a stop sign at a four-way intersection. Hart activated the blue lights and siren of his cruiser. The automobile continued traveling for three blocks, at which point it made a left turn and suddenly pulled over. Hart could see six people in the vehicle. As soon as the car stopped, all four doors of the vehicle flew open. Hart got out of his vehicle and yelled to the passengers to "stay in the car." Despite that order, the passenger in the right rear seat "took off running" carrying a backpack. Hart did not pursue this individual and remained next to the driver's side of his cruiser. From that position he could see through the car's rear window. Two individuals remained in the front seat and three were in the back. He saw the three back seat passengers "bent over" and "messing with something" on the floor of the vehicle. At this point, Hart was concerned for his safety, and, based on his training and experience, believed that the back seat passengers

were either hiding something or trying to retrieve a weapon. He responded by telling the occupants to place their hands on their heads. Only the two individuals sitting in the front seat complied. Those in the back seat remained bent over.

Hart immediately called for backup, drew his service weapon, and moved to the passenger side of his cruiser which afforded him a better view of the individuals in the vehicle but prevented them from seeing him. Hart continued to order the passengers to put their hands on their heads, and the back seat passengers eventually complied. Two to three minutes later, backup from the Methuen and Lawrence police departments arrived.[1] Hart reholstered his service weapon, and, as the other officers provided cover, took each of the occupants from the vehicle, one by one, beginning with the right rear passenger.

As each of the occupants was ordered out of the vehicle, Hart passed him to another officer, who placed the individual prone on the ground for a patfrisk. The last individual to be ordered from the vehicle was the defendant, who was seated in the left rear next to the door. As Hart took the defendant from the car, he patted the defendant's waistband and felt a hard object.[2] Hart lifted the defendant's shirt and saw the grip of a handgun and a back strap on the grip. Hart yelled "gun" several times to alert the other officers and seized the gun from the defendant. He placed the defendant on the ground, handcuffed him, and, because the gun was loaded, "cleared the weapon." The defendant was placed under arrest. The other four individuals were released; the driver was cited for failing to stop at a stop sign.

2. *Discussion.* When reviewing the allowance of a motion to suppress, we show substantial deference to the judge's legal conclusions, *Commonwealth* v. *Jones,* 375 Mass. 349, 354

---

[1]There is no evidence in the record as to the number of police officers who arrived at the scene.

[2]It is not clear from the record whether the defendant was frisked as he left the vehicle or after he was placed on the ground. The judge found that the defendant was frisked after he was on the ground. The testimony of the only witness at the hearing suggests that, because the defendant was the last of the occupants taken from the vehicle, he was frisked as he was being removed from the vehicle. Whether the defendant was standing or prone when the frisk took place makes no difference to our analysis.

(1978), but independently review the application of constitutional principles to the facts. *Commonwealth* v. *James, supra* at 314. The Commonwealth argues that the motion judge erred in finding that the detention and patfrisk of the defendant was an arrest.[3] According to the Commonwealth, the police officer's actions were consonant with those permitted during a *Terry*-type investigatory stop. See generally *Terry* v. *Ohio*, 392 U.S. 1 (1968). We agree.

In "stop and frisk" cases, there is a two-step analysis: whether the initiation of the investigation by the police was permissible in the circumstances, and whether the scope of the search was justified. See *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990); *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Both of these inquiries relate to the reasonableness of the police officer's conduct under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 659-661 (1999), *S.C.*, 432 Mass. 613 (2000). Stated otherwise, we consider whether the intrusiveness of the government's conduct is proportional to the degree of suspicion that prompted it. *Commonwealth* v. *Moses, supra* at 141. Because there is no bright-line rule when determining reasonableness or proportionality, we must balance the need to make the stop and conduct the search against the intrusion on the defendant. See *Commonwealth* v. *Silva, supra* at 405.

a. *Initiation of the stop.* For the police to initiate a permissible "stop and frisk" *Terry*-type investigatory stop, we require that the officer's actions be based on "specific articulable facts" and "reasonable inferences" that the defendant committed or was committing a crime. See *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993); *Commonwealth* v. *Moses, supra* at 140.

---

[3]The motion judge found that the case was governed by the principles set forth in *Commonwealth* v. *Bottari*, 395 Mass. 777 (1985), and that the actions of the police amounted to an unlawful arrest for which there was no probable cause. We find this case distinguishable in several respects. Unlike this case, the defendants in *Bottari* did not appear to be acting suspiciously or violating any law. *Id.* at 779. The officers initiated the investigation prompted by an informant's tip. *Id.* at 778. The officers' use of force was not precipitated by any actions of the defendants, and there was no testimony that they feared for their safety or the safety of others when they approached the vehicle with their guns drawn. *Id.* at 782, and cases cited.

The initial stop of the vehicle was justified in this case because the police officer observed a failure to stop at a stop sign in violation of G. L. c. 89, § 9. "Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995), quoting *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980).

b. *The exit order.* When the police are justified in stopping an automobile for a routine traffic violation, they may, for their safety and the safety of the public, order the driver or the passengers to leave the automobile, but only if they have a reasonable belief that their safety, or the safety of others, is in danger. *Commonwealth* v. *Gonsalves, supra* at 662-663.[4] To determine whether such a belief is reasonable, we ask "whether a reasonably prudent man in the policeman's position would be warranted" in such a belief. *Commonwealth* v. *Vazquez*, 426 Mass. 99, 103 (1997), quoting *Commonwealth* v. *Santana, supra* at 212-213.

A "mere hunch" is not enough, *Commonwealth* v. *Silva, supra* at 406, nor is nervousness or fidgeting on the part of the driver or passengers in a stopped vehicle an adequate reason to order them out of the car. *Commonwealth* v. *Torres*, 424 Mass. 153, 158-159 (1997). See *Commonwealth* v. *Davis*, 41 Mass. App. Ct. 793, 796-797 (1996). Yet it "does not take much for a police officer to establish a reasonable basis to justify an exit order or a search based on safety concerns." *Commonwealth* v. *Gonsalves, supra* at 664. *Commonwealth* v. *Moses, supra* at 138, 142 (defendant's ducking below dashboard justified exit order).

Here, there is ample conduct that, viewed objectively, supported the reasonableness of the officer's belief that his safety

[4] In *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999), *S.C.*, 432 Mass. 613 (2000), we declined to adopt the United States Supreme Court's holdings in *Pennsylvania* v. *Mimms*, 434 U.S. 106 (1977) (police officer may, as matter of course, order driver out of vehicle that has been lawfully stopped for traffic violation), and *Maryland* v. *Wilson*, 519 U.S. 408 (1997) (extending *Mimms* rule to approve similar orders given to passengers of stopped vehicles), finding them inconsistent with the rights guaranteed under the Massachusetts Declaration of Rights. We held that art. 14 prohibits the ordering of a driver or passengers out of a vehicle that has been stopped for a traffic violation unless the police officer has "a reasonable belief that the officer's safety, or the safety of others, is in danger." *Commonwealth* v. *Gonsalves, supra* at 663.

and the safety of others was in danger. Indeed, the facts support not only the officer's reasonable belief that his safety and the safety of others was in danger, but also that criminal behavior in addition to the traffic violation was afoot, and was the proper subject of further police investigation. The officer was therefore justified in ordering the defendant and the other occupants out of the vehicle before conducting any further inquiry with regard to the traffic violation for which the car was initially stopped.[5]

After the officer activated his siren and blue lights, the vehicle proceeded for three blocks without stopping or slowing down. See *Commonwealth* v. *Egan*, 12 Mass. App. Ct. 658, 661 (1981) ("particularized suspicion" that crime was in progress may be deduced from, among other factors, fact that car did not stop when signaled to do so and proceeded for another quarter mile). The vehicle then made a left turn before suddenly pulling over. The four doors of the vehicle flew open, and, despite an order to remain in the car, one of the passengers fled with a backpack. These events suggested that the fleeing passenger may have had illicit goods and that the remaining occupants of the vehicle might also flee. The officer ordered the occupants to remain in the vehicle and observed the three back seat passengers "bent over" and "messing with something" on the floor, suggesting that they might be concealing or retrieving a weapon. See *Commonwealth* v. *Moses, supra* at 140; *Commonwealth* v. *Ellsworth*, 41 Mass. App. Ct. 554, 555-556 (1996) (one of rear passengers bending forward as if to place object under seat in front of him justified officer's concern for safety); *Commonwealth* v. *Heughan*, 40 Mass. App. Ct. 102, 104-105 (1996) (back seat passenger bent down as if placing or retrieving object justified officer's concern for safety).

After the officer ordered the occupants of the vehicle to put

---

[5]This case is readily distinguishable from the routine traffic stop case, where the officer, after having received satisfactory information from the driver regarding the traffic violation for which the car had been stopped, has no further need to detain or interrogate the occupants of the car to effectuate the purpose of the stop. See *Commonwealth* v. *Torres*, 424 Mass. 153, 158-159 (1997) (well settled that police inquiry in routine traffic stop must end on production of valid license and registration unless police have grounds for inferring that either operator or passengers involved in crime or engaged in other suspicious conduct); *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978).

their hands on their heads, only the front seat passengers complied. The back seat passengers failed to comply, and remained bent over "messing with something," which heightened the officer's concern that they were concealing or retrieving a weapon. This activity, combined with the facts that the occupants of the vehicle outnumbered him five to one, that one passenger had already fled carrying a backpack, and that he could not determine whether that missing passenger was still in the area, reasonably caused the officer's concern for his safety and the safety of the public. The officer drew his gun and called for backup support. He did not advance on the car until that support arrived two to three minutes later. When the backup units arrived, the officer ordered the occupants out of the vehicle one by one.

As this stop, which began as a routine traffic stop, evolved into a more full-fledged *Terry*-type stop, the officer acted reasonably and within the limits of both the Fourth Amendment and art. 14. His actions, and the actions of the other officers who arrived shortly after the stop, were no more intrusive than necessary at each step to effectuate both the safe conclusion to the traffic stop and the further investigation of the suspicious conduct on the part of the vehicle's occupants that occurred after the officer made his presence known by activating his blue lights and siren.

c. *The patfrisk.* Once the officer reasonably concluded that his safety or that of other persons was at risk, and ordered the occupants to step out of the vehicle, it followed that it was proper for him to conduct a patfrisk for weapons before proceeding further.[6] "To justify either the search or the order to the occupants to exit the automobile, 'we ask "whether a reasonably

---

[6]*Terry* v. *Ohio*, 392 U.S. 1 (1968), permits a "carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault [the officer]." *Id.* at 30. If a patfrisk of the outer clothing indicates that a weapon is present, the police have the right to search further. *Commonwealth* v. *Silva*, 366 Mass. 402, 408 (1974). In the present case, Officer Hart felt a hard object in the defendant's waistband, and then lifted his shirt to investigate further. It was then that he discovered that the object was a gun. This sequence comports with an appropriate patfrisk. See *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977), citing *Commonwealth* v. *Silva*, *supra* (search is confined to what is minimally necessary to learn whether suspect is armed and to disarm him once weapon is discovered);

prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." ' " *Commonwealth* v. *Vazquez*, 426 Mass. 99, 102-103 (1997), quoting *Commonwealth* v. *Santana, supra* at 212-213. The standard for a patfrisk is the same as the standard required to justify an order to the occupants of a vehicle stopped for traffic violations to leave the vehicle. See *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). This standard is the same whether it occurs in the context of a routine traffic stop or in the context of a *Terry*-type stop. See *Commonwealth* v. *Vazquez, supra*; *Commonwealth* v. *Silva*, 366 Mass. 402, 405-407 (1974); *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977). The fact that backup officers arrived on the scene before the patfrisk was conducted does not diminish the justification for the patfrisk. The danger of an armed passenger was present until the occupants were pat frisked for weapons, and disarmed. See *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 328 (1993) (officer blocked defendant's vehicle and ordered men out of vehicle at gunpoint and to lie face down on the ground until other officers arrived to conduct patfrisk).

The detention of the defendant while backup officers arrived and the patfrisk was conducted did not transform the stop into an arrest. See *Commonwealth* v. *Willis*, 415 Mass. 814, 820-821 (1993) (even though officers outnumbered defendant and approached him with guns drawn, it was stop and not arrest because display of force during stop was justified by officers' fear for their safety); *Commonwealth* v. *Moses*, 408 Mass. 136, 141-142 (1990) (asking for car keys when officer outnumbered three to one by defendants not an arrest). The level of police intrusiveness was proportional to the danger identified by the officer who made the stop, thus satisfying *Terry*.[7] *Terry* v. *Ohio*, 392 U.S. 1 (1968). See *Commonwealth* v. *Almeida, supra* at 272; *Commonwealth* v. *Andrews, supra* at 326-329 (holding

---

*Commonwealth* v. *Silva, supra* at 408 (noting that only after pat down gives indication weapon present, do police have right to search further).

[7] We have not found a patfrisk to be an overly intrusive action in these circumstances. See *Commonwealth* v. *Loughlin*, 385 Mass. 60, 65 (1982) (Hennessey, C.J., concurring) (pat down solely for protection of police and directed solely toward concealed weapons); *Commonwealth* v. *Silva, supra* at 408, quoting *Terry* v. *Ohio, supra* at 29 (pat down must be confined to intru-

four men at gunpoint for five to six minutes until able to "flag down" assistance and then pat frisking and handcuffing them was not overly intrusive when the officer justified due to concern for his safety and the safety of others).

In sum, the actions taken by the police in this case were reasonable. The intrusion on the defendant was justified by, and proportional to, the concerns for the safety of the officers and of the public. The order allowing the motion to suppress is reversed. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

sion reasonably designed to discover guns, knives, clubs, or other instruments for assault of police officer).