COMMONWEALTH *vs.* JORGE GUTIERREZ.

No. 87-393.

Suffolk. February 16, 1988. — May 16, 1988.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Search and Seizure,* Probable cause, Threshold police inquiry. *Probable Cause. Constitutional Law,* Search and Seizure. *Arrest.*

On the evidence presented at a hearing on a motion to suppress certain controlled substances seized from the defendant's person during a lawful investigatory stop by police officers at an airport, the judge, in allowing the motion, was warranted in concluding that there was an insufficient basis at the time of the stop to establish probable cause for the police to search the defendant's pockets for controlled substances [45-46]; that, in the circumstances, a pat frisk of the defendant for a weapon was not warranted [46-47]; and that, in any event, the permissible scope of a pat frisk was exceeded when the police delved into the defendant's pockets [47].

INDICTMENT found and returned in the Superior Court Department on January 15, 1986.

A motion to suppress evidence was heard by *Robert A. Mulligan, J.*

An application for an interlocutory appeal was allowed by *Paul J. Liacos,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

*John B. Glynn* for the defendant.

BROWN, J. The Commonwealth appeals pursuant to Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979), from the order of a Superior Court judge suppressing evidence seized from the defendant's person during a warrantless search conducted at Logan Airport.

The relevant facts found by the judge are as follows. At approximately 8:00 P.M. on January 4, 1986, State Trooper Andrew Palombo was at Logan Airport watching passengers debark from the Eastern Airlines shuttle from New York City. His primary responsibility at this location was to intercept drugs entering Massachusetts. Upon observing the defendant, a twenty-four year old Hispanic male, Palombo immediately recognized him as the same young man he had seen earlier that day boarding the 4:00 P.M. Eastern shuttle to New York City. The defendant, dressed as he had been earlier, was wearing an obviously oversized topcoat and carrying the same small gym bag. The defendant was one of the last passengers to get off the plane.

Palombo signalled to Troopers Grassia and Johnson, who were jointly conducting the surveillance with him. The defendant, glancing around constantly, headed directly for the escalator to the baggage claim area. He boarded the escalator and, while descending, looked over his shoulder as if to see who was behind him. Palombo followed him, using the stairway adjacent to the escalator. When Gutierrez arrived at the bottom, he got off the escalator, turned left and immediately got on the escalator ascending to the upper level, where he got off and headed directly, at an oblique angle, toward an exit to his right. He walked hurriedly across the terminal and out that door. Palombo followed. Once outside, the defendant walked around the small barrier between the two automatic doors and immediately reentered through the entrance door. Palombo followed him back into the terminal.

Noting that the defendant was looking behind every few steps, was wearing an oversized coat which could be used to carry contraband, and was engaging in other seemingly suspicious activities, Palombo decided to investigate further, that is to say, to conduct a threshold inquiry.[1] Palombo came up behind the defendant, put his hand on his left shoulder, showed his badge and identified himself as a police officer. Palombo asked

---

[1] For an excellent discussion, cautioning as to the constitutional limitations placed upon the so-called "drug courier profile," see *United States* v. *Sokolow,* 831 F.2d 1413, 1418-1420 (9th Cir. 1987) (en banc).

the defendant if he had just come from New York City. Gutierrez said that he had. Palombo then asked Gutierrez if he would speak with him; Gutierrez said that he would. Palombo asked for identification and Gutierrez gave him a plastic identification card which listed an address in the Jamaica Plain area. Palombo asked for another form of identification. Gutierrez handed him a learner's permit, which listed an address in the Roxbury section. On a later produced third form of identification a different Jamaica Plain address was listed. Gutierrez then stated that the Registry must have made a mistake on the address because he had never lived in Roxbury.

Gutierrez appeared very nervous. Palombo then told Gutierrez that he was a suspect in a drug investigation and asked for permission to search his gym bag. The defendant handed the bag over to Palombo. Palombo searched the bag and found nothing. Palombo directed Gutierrez to move out of the open area over to a corner. The defendant complied. Gutierrez then had been with the troopers for about seven minutes.

Palombo told Grassia to search the defendant's pockets. The officer began to search the pockets of Gutierrez's topcoat when he felt a hard object near the belt line of Gutierrez's pants. Grassia grabbed Gutierrez by the hand, pulled his revolver and shouted, "Look out, he's got a gun." The hard object was removed from the crotch area. The trooper unwrapped paper towels uncovering a plastic bag containing a nearly symmetrical, solid, rock-like, white substance, 6 inches long, 4½ inches wide, and 1½ inches thick.

We also are told by the judge that Gutierrez has been in the United States for eight years; he speaks English well and works as a dental technician for his parents. Trooper Palombo has been involved in hundreds of drug investigations in his fifteen years as a State trooper. He has, during that period, made eighty seizures of drugs from people debarking from the Eastern shuttle.

The judge concluded that, based upon the defendant's suspicious actions in the airport, coupled with his four-hour round trip to New York City, Officer Palombo had articulable reasons, founded on reasonable suspicions, which warranted an inves-

tigatory stop of the defendant.[2] See *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Commonwealth* v. *Borges*, 395 Mass. 788, 790 (1985); *United States* v. *Gallego-Zapata*, 630 F. Supp. 665, 668 (D. Mass. 1986).

Where, as here, the evidence consists solely of oral testimony, the determination of the weight and credibility of the testimony is the function and responsibility of the motion judge, and the subsidiary findings of fact made by him in support of the allowance of a motion to suppress "will be accepted by an appellate court absent clear error." *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978). *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980). See also *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). The judge had the opportunity to listen to and evaluate the testimony of Gutierrez and the various police officers. The judge determined that the police officers had no reason to fear that Gutierrez was armed or posed a threat to them. He further found that the evidence was discovered during a search of Gutierrez's topcoat pockets.

The Commonwealth argues that the motion judge's finding that the troopers did not discover the bulge in the defendant's pants until Trooper Grassia felt it while "delving into the pockets of [the defendant's] topcoat" is not based on the evidence and is clearly erroneous. We do not agree. Palombo testified that the defendant consented to Grassia's search of his topcoat pockets,[3] but the defendant contradicted this. It is clear from his ruling that the judge did not find the testimony of the troopers credible. Significant additional record support for the judge's implicit finding undercutting the officers' credibility is provided by the seemingly inexplicable nature of their admitted conduct in the instant circumstances. Query: If the defendant already had been detained by the officers for five to ten

---

[2] The judge correctly ruled that: "When Officer Palombo placed his hand on the suspect's shoulder, he did so to stop Gutierrez. Such minimal contact did not constitute a seizure. Although *Terry* type detentions should be brief, a further investigation, because of the inconsistent identification provided by Gutierrez, was warranted."

[3] The motion judge did find the search of the defendant's gym bag to have been consensual.

minutes before they searched his topcoat pockets and if the troopers were well aware of a bulge in his pants, as they have claimed, prior to the intrusion into his topcoat pockets, why then did they *not* pat him down sooner, or move more directly to the crotch area? The judge reasonably could conclude that certain critical portions of the officers' testimony lacked credibility.

The judge's refusal to credit these critical portions of the officers' testimony cuts away the underpinnings of the Commonwealth's argument that, at some point in the course of the threshold inquiry, Palombo's suspicions ripened into probable cause to search for controlled substances. We agree with the motion judge that, without the prior awareness of the bulge, mere nervousness and somewhat inconsistent identification documents would be an insufficient basis on which to establish probable cause to search.

The Commonwealth argues, in the alternative, that, even if the troopers did not have probable cause to conduct a full search of the defendant for drugs, the judge erred in allowing the motion to suppress because the cocaine was discovered during a lawful frisk of the defendant for a weapon.[4]

The motion judge ruled that a pat frisk of Gutierrez was not warranted, as the officers knew that he had just flown in from New York City and had presumably been through a metal detector. In addition, the judge found that the officers were not concerned for their safety as shown by their engaging the defendant in conversation for many minutes without frisking

---

[4] The Commonwealth also attempts to argue that, even if the search of defendant's topcoat pockets was not justified, the cocaine was discovered not as the result of searching the topcoat pockets but as the result of the defendant's own intervening act of reaching for the bulge and causing Trooper Grassia to think that he was reaching for a gun. As support for this proposition, the Commonwealth cites *Commonwealth* v. *King,* 389 Mass. 233, 245-246 (1983). There, despite a trooper's exceeding the scope of a permissible threshold inquiry, the intervening conduct by the defendant rendered the trooper's subsequent actions appropriate. The short answer is that here the motion judge did not credit the officers' testimony. Nor did he believe that the defendant took any action which would warrant such a response or reaction by the officers.

him. We need not pause to discuss those rulings, as we conclude the motion was properly allowed for a different reason.

"In the case of the self-protective search for weapons, [an officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron* v. *New York*, 392 U.S. 40, 64 (1968). In the instant case, the troopers have pointed to no particular facts from which they *reasonably* could infer that the defendant was armed and dangerous. The officers testified to having seen the bulge well before the search began (i.e., each time the defendant reached for identification, "[h]e swept aside" the long overcoat he was wearing and exposed the bulge), yet it was not until the defendant supposedly reached for the bulge that the troopers became fearful for their lives.[5] This testimony the judge deemed not credible, and as mentioned earlier, credibility is the call of the motion judge. See *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979); *Commonwealth* v. *Bottari*, 395 Mass. at 780.

The reasonable inference drawn by the judge is that the troopers did not become aware of the bulge until they delved into the pockets of the defendant's topcoat. See and compare *Sibron* v. *New York*, 392 U.S. at 45. It appears that the subsequent histrionics associated with Grassia's exclamation that "he's got a gun" were a ruse, developed as an afterthought, to enable the troopers to search the defendant and seize the object. See *Commonwealth* v. *Borges*, 395 Mass. at 798 (Hennessey, C.J., concurring). Such an intrusion exceeded the permissible scope of a pat frisk. See *Terry* v. *Ohio*, 392 U.S. at 30-31. See also *Commonwealth* v. *Lehan*, 347 Mass. 197, 204-205 (1964). As the judge did not find that there was probable cause to search, and the record does not require us so to conclude (see *Commonwealth* v. *Moon*, 380 Mass. at 756), we affirm the order allowing the motion to suppress.

*So ordered.*

---

[5] Palombo testified in this regard: "When he dove his hands into his pants for the lump that we all knew was there."