## COMMONWEALTH *VS.* JOHN D. GONSALVES.

No. 97-P-2331.

Plymouth. October 5, 1998. - January 19, 1999.

Present: ARMSTRONG, GILLERMAN, & KASS, JJ.

Further appellate review granted, 429 Mass. 1102 (1999).

*Search and Seizure,* Automobile, Threshold police inquiry. *Threshold Police Inquiry. Constitutional Law,* Search and seizure. *Controlled Substances.*

In the circumstances of a police officer's stop of a motor vehicle, which was justified by an observed traffic violation, no specific and articulable facts, or reasonable inferences drawn therefrom, were shown to have supported the officer's order to a back seat passenger to step out of the vehicle; consequently, items seized from plain view in the vehicle after the passenger got out and was "secured" were properly suppressed. [188-190]

INDICTMENT found and returned in the Superior Court Department on May 27, 1997.

A pretrial motion to suppress evidence was heard by *Patrick F. Brady*, J.

An application for an interlocutory appeal was allowed by *John M. Greaney*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported to the Appeals Court by him.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

*Gary A. Nickerson* for the defendant.

KASS, J. At about 9 P.M. on March 5, 1997, William R. Serpa, a State trooper, on routine patrol duty on Route 195, pulled over a white Chevrolet taxicab because it had faded over a marked line and into the breakdown lane. During the course of the stop, Trooper Serpa ordered a rear-seat passenger out of the taxi, searched around the rear seat, and found cocaine. A judge of the Superior Court ordered that the fruits of Trooper Serpa's search be suppressed because the trooper had "no objective

basis upon which to order the defendant out of the vehicle."
The Commonwealth asks us to adopt the holding of *Maryland*
v. *Wilson*, 519 U.S. 408, 415 (1997), which allows a police of-
ficer, as matter of routine in a traffic stop, to order a passenger
out of a car. We decline the invitation.

1. *Salient facts.* When he saw the taxi veer into the breakdown
lane, Trooper Serpa suspected the driver might be drunk. The
taxicab driver pulled over on command from flashing blue lights
on Serpa's cruiser. There were two passengers in the car, one in
front and one — the defendant — in back. Trooper Serpa ap-
proached the car from the driver's side, where he asked for and
obtained the driver's license and the vehicle's registration.
Those documents were facially in order and proved out when
the trooper later checked them by radio.

Before so checking the bona fides of the license and registra-
tion, the trooper turned his flashlight on the passengers. He
became interested in the back-seat passenger, who had appar-
ently hired the cab; the man in front was a friend of the driver.
Trooper Serpa thought the back-seat man to be acting highly
nervous. His hands were trembling and moving from his lap to
the seat and back to his lap again. The back-seat man appeared
to Serpa to be breathing heavily. Struck by the man's nervous-
ness, the trooper ordered him out of the taxi and pat-frisked
him. The pat-down turned up no weapons or anything else not-
able. In response to questioning, the back-seat man, whom we
shall now refer to as the defendant, explained he was nervous
because of warrants outstanding against him for driving without
a license. Trooper Serpa suspected there were other reasons. He
deposited the defendant, "secured," in his cruiser and turned
his attention to an examination of the back seat of the taxi.
There he found a bag of cocaine that measured seventy-eight
grams, enough to support a trafficking indictment against the
defendant. As to the driver, the trooper returned to him, cited
him for a marked-line violation, and sent him on his way with
the front-seat passenger. There had been no signs that the driver
was inebriated.

The judge who heard and allowed the suppression motion
determined that Trooper Serpa did not have a legally sufficient
basis for ordering the defendant from the taxi. Nervousness, the
judge observed, was not enough to go on. The judge wrote:

"No gesture or conduct indicated the presence of a weapon
on the defendant's person or in his immediate vicinity.

Although certainly the trooper had every right to be careful for his own safety, he had no objective basis upon which to order the defendant out of the vehicle and to continue his investigation. The trooper was simply following a 'hunch' because of the defendant's demeanor. Although the trooper's instincts were on target, the evidence must nonetheless be suppressed."

2. *Automatic exit order.* The position of the Commonwealth is that we ought not to sift the facts for articulable reasons that support an order directing the driver or passenger of a motor vehicle stopped for a traffic offense to step out of that vehicle. Rather, we should follow the rule pronounced by the United States Supreme Court in *Pennsylvania* v. *Mimms,* 434 U.S. 106, 111 (1977), that a police officer may order a driver out of a lawfully stopped car as a matter of course, and that the same rule applies to passengers in that car. *Maryland* v. *Wilson,* 519 U.S. at 415.[1] We reject the Commonwealth's contention, because the law as developed under art. 14 of the Declaration of Rights of the Massachusetts Constitution does not follow the *Mimms/ Wilson* rules.[2]

As to *Pennsylvania* v. *Mimms, supra,* we have had very recent occasion to state that our courts do not follow so much of that opinion as permits an automatic exit order, but that our decisions, to validate an exit order directed to the driver, require evidence of specific articulable facts that would warrant a police officer reasonably to be apprehensive about his safety. See *Commonwealth* v. *Williams, ante* 181, 182-183 (1999). See also *Commonwealth* v. *Santana,* 420 Mass. 205, 212-213 (1995); *Commonwealth* v. *Vazquez,* 426 Mass. 99, 102-103 (1997); *Commonwealth* v. *Farmer,* 12 Mass. App. Ct. 961, 962 (1981). When an officer stops a car for an apparent traffic violation and receives a license and registration that are in order, that is the end of the inquiry unless the officer has a reasonable suspicion, again grounded in articulable facts, that the driver or passengers are engaged in the commission of a crime or are about to com-

---

[1]In a very recent decision the Supreme Court decided that a police officer who made a routine traffic stop and issued the driver a citation for speeding could not thereupon conduct a "full field-type search" of the car the officer had stopped. *Knowles* v. *Iowa,* 119 S. Ct. 484, 488 (1998).

[2]As to reliance on art. 14 of the Declaration of Rights of the Massachusetts Constitution in car stop cases, see *Commonwealth* v. *Torres,* 424 Mass. 153, 154-155 (1997).

mit one. *Commonwealth* v. *Ferrara*, 376 Mass. 502, 504-505 (1978). *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997). *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 471-472 (1996).

Apart from the simple logic that passengers do not have lesser constitutional rights than drivers, we have already applied to exit orders to passengers the requirement of reasonable suspicion grounded in articulable facts. *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. 531, 534 (1998). Taken together, our decisions in the *Williams* case and the *Alvarez* case impose under the State Constitution more discipline on exit orders incident to traffic stops than is required by *Maryland* v. *Wilson*, 519 U.S. at 415, under the Fourth Amendment to the United States Constitution. A police officer making a traffic stop in the Commonwealth may not order a passenger out of a motor vehicle as matter of course.

3. *Articulable grounds for exit order.* The motion judge, it will be recalled, found that Trooper Serpa observed the defendant's hands trembling and moving from his lap to the seat and back to his lap. These were manifestations of nervousness. Nothing was seen in those hands, so the trooper had nervousness only to go on. No gesture or conduct suggested that the defendant was carrying a weapon or had one nearby. We accept the findings of the motion judge in the absence of clear error, and the record does not suggest error. *Commonwealth* v. *Blanchette*, 409 Mass. 99, 107 (1991). *Commonwealth* v. *Torres*, 424 Mass. at 157. *Commonwealth* v. *Gutierrez*, 26 Mass. App. Ct. 42, 45 (1988). The motion judge had the advantage of hearing and seeing Trooper Serpa on the witness stand and was in a position to weigh the reliability and force of the trooper's testimony. A general statement that the suspect seemed to be "nervous" or even "very nervous" falls short of a specific articulable fact or reason for an exit order. For the most recent statement on that subject see *Commonwealth* v. *Williams*, *supra* at 184-185. See also *Commonwealth* v. *Gutierrez*, 26 Mass. App. Ct. at 46; *Commonwealth* v. *Davis*, 41 Mass. App. Ct. 793, 796 (1996). A hunch that the suspect is involved with something unsavory does not provide a basis for an exit order or search. *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. at 472. *Commonwealth* v. *Cardoso*, *post* 901 (1998). Compare *Commonwealth* v. *Santana*, 420 Mass. at 213 (car had

not pulled over for one mile and one-half, ignition was popped, and the driver had kept the engine running); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 399 (1998) (passenger made uncommon body movements, including bending out of officer's sight and attempting to put on his coat as if to conceal something). Here, once the defendant Gonsalves had been ordered out of the taxi, the pat-down he underwent produced nothing of interest. To that degree there was still less justification for a subsequent search of the taxi except that the trooper, with a fine nose, was going to sniff further until he found something. See *Commonwealth* v. *Bartlett, supra.*

> *Order allowing motion to suppress affirmed.*