## COMMONWEALTH *vs.* GEORGE HOOKER.

No. 00-P-81.

Suffolk. June 13, 2001. - October 2, 2001.

Present: ARMSTRONG, C.J., GRASSO, & BERRY, JJ.

*Witness,* Credibility. *Search and Seizure,* Automobile, Threshold police inquiry. *Constitutional Law,* Search and seizure. *Privacy. Threshold Police Inquiry.*

At the trial of an indictment for possession of a class B substance with intent to distribute, the judge erred in denying the defendant's motion to suppress cocaine seized in a warrantless search of a taxicab lawfully stopped by police for an observed motor vehicle violation, where the police possessed neither a reasonable suspicion of criminal activity nor a reasonable apprehension of danger, based on the defendant's actions in the taxicab, the officer's knowledge of the defendant's two prior arrests, or the officer's previous experiences with the defendant, as required to justify ordering the defendant, a passenger in the rear seat of the taxicab, out of the taxicab and looking beneath a jacket he had placed on the seat. [685-688]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on August 3, 1998.

A pretrial motion to suppress evidence was heard by *Edward R. Redd,* J., and the case was heard by him.

*Jane E. Ross* for the defendant.

*Cathryn A. Neaves,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. In this appeal from his conviction for illegal possession of a class B substance, cocaine, with intent to distribute (G. L. c. 94C, § 32A[*a*]), we consider the defendant's contention that the trial judge erroneously denied his motion to suppress evidence seized in a warrantless search of the taxicab in which he was a passenger. We conclude that the trial judge erred in his application of the appropriate legal standards to the facts found, and we reverse the defendant's conviction.

1. *Facts.* We summarize the facts found by the motion judge.

On July 31, 1998, Officer Michael Devane, a Boston police veteran with extensive experience in narcotics activity, was with three other officers in plain clothes operating an unmarked police vehicle on Blue Hill Avenue in the Roxbury section of Boston. At about 8:20 P.M., as Officer Devane was turning onto Moreland Street, a taxi passed in front of him carrying a rear seat passenger, later identified as the defendant. As Officer Devane travelled behind the taxi, he observed the defendant looking back in his direction. Shortly thereafter, the taxi began to make a left turn onto Copeland Street and then abruptly swerved back to the right, nearly hitting an oncoming vehicle and then the curb. Officer Devane activated the emergency lights and siren of his vehicle and stopped the taxi for the observed motor vehicle violation.

From his vantage behind the taxi, Officer Devane saw the defendant moving his shoulders back and forth. While Officer Devane could not see the defendant's hands, he surmised from these movements that the defendant was putting something on the rear seat. As Officer Devane approached the passenger side of the taxi, he observed the defendant again looking back.

At this point, Officer Devane recognized the passenger as the defendant, a man he had twice arrested in the past — once, more than five years earlier, for domestic violence, and another time, about two years prior, in connection with a stolen motor vehicle. In the past, the defendant had been quite violent and unruly and had acted threateningly and been verbally abusive to Officer Devane, but as the defendant had gotten older, he no longer behaved in that manner.

While Officer Devane approached the defendant, another officer requested and obtained license and registration information from the taxi's operator and inquired as to the erratic operation. The driver related that although he had started to turn onto Copeland Street, the defendant directed him not to go there. Meanwhile, Officer Devane had opened the taxi door to "tell the defendant the reason for the stop." He then asked the defendant why he hadn't wanted to go down Copeland Street, a high crime area. The defendant responded that it was "hot," with the police behind him, and he believed that the police would follow him.

Because of the movements he had observed and the defendant's apparent nervousness, as well as his prior experience with the defendant as a violent person, Officer Devane asked the defendant to get out of the taxi. He was concerned that the defendant might have disposed of some items, and he wanted to check out the seats. When the defendant got out, Officer Yee leaned into the taxi and lifted the defendant's jacket, finding the cocaine that formed the basis for prosecution.

2. *Discussion.* Assessment of witness credibility is the province of the motion judge, see *Commonwealth* v. *Gutierrez,* 26 Mass. App. Ct. 42, 47 (1988), so we accept the judge's subsidiary findings of fact, because we observe no clear error. See *Commonwealth* v. *Torres,* 433 Mass. 669, 670 (2001). While we accord substantial deference to the judge's legal conclusions, we review independently the application of constitutional principles to the facts. *Id.* at 671-672. The judge erred in determining that the defendant had no expectation of privacy in the back seat of the taxi. An expectation of privacy in the interior of a motor vehicle generally depends on the nature of the activities involved and the degree of visibility. See *Commonwealth* v. *Simmons,* 392 Mass. 45, 46-51, cert. denied, 469 U.S. 861 (1984). While an expectation of privacy did not protect the defendant from being observed through the windows by police and others as the taxi navigated the public way, or when it was stopped lawfully, the defendant did have a reasonable expectation that the police would not arbitrarily order him from the taxi and look beneath a jacket he had placed on the seat. See *Commonwealth* v. *Podgurski,* 386 Mass. 385, 389 (1982), cert. denied, 459 U.S. 1222 (1983).

Both sides agree that the stop of the taxi for the observed motor vehicle violation was proper.[1] See *Commonwealth* v. *Santana,* 420 Mass. 205, 207 (1995). However, in a routine motor vehicle stop, the police may not, as they did here, order a driver or passenger from a lawfully stopped vehicle without reasonable apprehension of danger to an officer or others. See *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 662-663 (1999); *Com-*

---

[1] It is of no legal significance that the taxi operator was not cited, but received only a verbal warning for the observed motor vehicle violation. See *Commonwealth* v. *Ciaramitaro,* 51 Mass. App. Ct. 638, 634 (2001).

*monwealth* v. *Williams*, 46 Mass. App. Ct. 181, 183 (1999).[2] The facts found by the judge do not support the legal determination that the police possessed either a reasonable suspicion of criminal activity, see *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981), or a reasonable apprehension of danger, see *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 306-307 n.5 (1986). Consequently, the actions of the police were not proportionate to what the circumstances called for, either at the time of the initial stop or as the stop developed. Contrast *Commonwealth* v. *Torres*, 433 Mass. at 672-675.

This was not a swiftly developing situation. See *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 325-326 (2001). Besides the motor vehicle violation, the police observed no other illegal activity as they followed the taxi and nothing occurred in the course of the stop, either individually or in combination with other facts, to create a reasonable suspicion that the defendant was engaging in criminal activity or posed a reasonable risk of harm to the officers or others. Compare *Commonwealth* v. *Torres*, 433 Mass. at 673-675; *Commonwealth* v. *Riche*, 50 Mass. App. Ct. 830, 832-834 (2001); *Commonwealth* v. *Robie*, 51 Mass. App. Ct. 494, 497-498 (2001). The defendant's looking back at the following vehicle before the stop is not remarkable. Considered objectively, his looking back after the stop should have appeared even less remarkable to Officer Devane and the others given that their vehicle was not a marked unit, they were in plain clothes, and the adjoining neighborhood was a high crime area.[3] A citizen is not required to sit absolutely motionless in a stopped vehicle. Not every turn

---

[2] Protection from unjustified exit orders is granted to motor vehicle drivers and passengers under art. 14 of the Declaration of Rights of the Massachusetts Constitution. *Commonwealth* v. *Gonsalves*, 429 Mass. at 662-663. In this regard the protection granted to citizens under art. 14 exceeds that available under the Fourth Amendment to the United States Constitution. Compare *Maryland* v. *Wilson*, 619 U.S. 408 (1997).

[3] The police did not learn that the defendant had recognized them as such until after the stop and their questioning of the operator and the defendant. Consequently, the defendant's looking back at their vehicle, during and immediately after the stop, does not take on a strange, furtive, or evasive character so as to infuse otherwise innocent behavior with an incriminating aspect. See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 71 & n.11 (1997); *Commonwealth* v. *Gunther G.*, 45 Mass. App. Ct. 116, 119 (1998).

of the head is a furtive gesture causing a defendant a fate equivalent to that of Lot's wife.[4] See *Commonwealth* v. *Holley*, *ante* 659, 663-665 (2001) (mere movement by a motorist in the course of a motor vehicle stop is not a furtive gesture). Moreover, a defendant's desire to avoid an interaction with police, without more, does not create reasonable suspicion, see *Commonwealth* v. *Bacon*, 381 Mass. 642, 645-646 (1980); *Commonwealth* v. *Mercado*, 422 Mass. 367, 371 (1996), or reasonable apprehension of danger, compare *Commonwealth* v. *Silva*, 366 Mass. 402, 408-409 (1974).[5]

That the defendant moved his upper shoulders and appeared to place something on the seat is neither indicative of criminality nor a ground for reasonable apprehension. He did not duck out of sight, lean forward, or move back and forth in his seat. In the circumstances here, moving his shoulders did not amount to strange, furtive, or suspicious behavior. See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. at 71 & n.11; *Commonwealth* v. *Holley*, *supra* at 663-665. Nor does the fact that these events occurred in proximity to a high crime area, by itself, operate to justify the exit order. See *Commonwealth* v. *Cheek*, 413 Mass. 492, 496-497 (1992); *Commonwealth* v. *Holley*, *supra* at 663 (that a routine motor vehicle violation takes place in a high crime area does not, without more, allow police to issue an exit order or conduct a patfrisk).

Adding to the assessment Officer Devane's knowledge that the defendant had been arrested on two prior occasions, once for domestic violence, does not create a reasonable apprehension of danger, even when combined with Devane's observation that the defendant was "a little" nervous. Officer Devane's experiences with the defendant had never involved a firearm or other weapons. Compare *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 618 (1991). The defendant was not threatening or

---

[4]As punishment for disobeying the command not to look back, Lot's wife was turned into a pillar of salt. Genesis 19:17-26.

[5]Even assuming that Officer Devane's questioning of the defendant as to his reason for directing the taxi operator not to turn down Copeland Street was permissible, we do not view the defendant's response that it was "hot down there" and that "I figured you guys would come down there after me" as providing a reasonable suspicion that the defendant was engaged in criminal activity.

verbally abusive to Officer Devane when he opened the taxi door and engaged the defendant in conversation.[6] Moreover, that the defendant was nervous was not unusual in such an encounter with the police, and provided no reason to believe the defendant would erupt into violence. See *Commonwealth* v. *Gonsalves*, 46 Mass. App. Ct. 186, 189 (defendant, a passenger in a taxi stopped by the State police, was improperly ordered to exit the taxi where the trooper's observation that defendant was "very nervous" failed to provide the trooper with reasonable ground to believe himself to be in danger), *S.C.*, 429 Mass. 658 (1999).

It cannot be fairly maintained that the defendant left the taxi voluntarily. Surrounded by three police officers, one of whom had arrested him in the past, the defendant undoubtedly alighted from the cab in response to what a reasonable person would have considered to be a command rather than a mere request.

Officer Devane's exit order to the defendant was based on a hunch that the defendant "might have disposed of [some] items" inside the taxi. Although in hindsight Officer Devane's hunch proved to be correct, we view the reasonableness of the search and seizure from the vantage preceding the discovery of the drugs, and on that basis the actions of the police here exceeded constitutional bounds.

*Judgment reversed.*

*Verdict set aside.*

---

[6]Because the evidence must be suppressed, we need not address whether Officer Devane's opening of the passenger door of the taxi in these circumstances was itself a constitutional intrusion made without justification. See *Commonwealth* v. *Podgurski*, 386 Mass. at 388-390; *Commonwealth* v. *Leonard*, 422 Mass. 504, 511-512, cert. denied, 519 U.S. 877 (1996); *Commonwealth* v. *Tompert*, 27 Mass. App. Ct. 804, 806 (1989).